# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| In Re | |
|---|---|
| LESLIE ANN GRAY-BAILEY, aka LESLIE BAILEY, | **Bankruptcy Case No. 09-41539-JDP** |
| **Debtor.** | |

_____

# MEMORANDUM OF DECISION
_____

**Appearances:**

Brent T. Robinson, ROBINSON, ANTHON & TRIBE, Rupert, Idaho, Attorneys for Debtor.

Lance Loveland, PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, Burley, Idaho, Attorneys for Creditor D.L. Evans Bank.

Jared Harris, BAKER & HARRIS, Blackfoot, Idaho, Attorneys for Creditor Chris Drakos.

Forrest Hymas, Hailey, Idaho, Chapter 12 Trustee.

MEMORANDUM OF DECISION - 1

## Introduction

On March 31, 2010, the Court conducted a confirmation hearing concerning the Second Amended Chapter 12 Plan, Docket No. 86, proposed by Debtor Leslie Ann Gray-Bailey.  At the hearing, the chapter 12[1] trustee, Forrest Hymas, recommended that the plan be confirmed, and all outstanding objections to confirmation by creditors appeared to be tentatively resolved, save for one:  the objection posed by secured creditor Chris Drakos, Docket No. 92.  Following the hearing, the Court invited the parties to submit supplemental briefs.  Debtor and Drakos have done so. Docket Nos. 112, 113, and 119.  After considering the record in this case and the arguments of the parties, this Memorandum disposes of the issues raised by Drakos' objection to confirmation of Debtor's plan.[2]

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

[2]  This decision constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052; 9014.

MEMORANDUM OF DECISION - 2

**Facts**

The material facts in this case are undisputed and can be set forth in nutshell-fashion.

Several years ago, Debtor purchased a small home and acreage located near Salmon, Idaho from Drakos on credit via a real estate contract. Debtor lives on the property, and pastures a modest number of cattle there. Debtor earns a living from her work as a bookkeeper for others, and through a small cattle operation.  Most of Debtor's livestock is kept on rented pasture.

Debtor's original intention was to subdivide and sell the acreage to realize what she felt was its significant recreational value.  When she could not sell the smaller parcels, she attempted to market the property as a whole.  That effort also failed to generate a sale.

When Debtor was unable to pay the Drakos contract payments, he sued her in state court to foreclose her contract obligations as a mortgage, eventually recovering a judgment against her for over $600,000.  Debtor filed a chapter 12 petition on the eve of a sheriff's sale to save the ranch

MEMORANDUM OF DECISION - 3

property by proposing a plan allowing her more time to market the land.

Her efforts to confirm a plan or to sell the ranch have, thus far, been

unsuccessful, and as a result, at the creditor's request, the Court granted

relief from the automatic stay to Drakos, effective April 16, 2010, to

proceed with a foreclosure sale.

In Debtor's latest plan, she proposes to use her employment and

cattle income to pay her debts, other than that owed to Drakos. Debtor's

plan provides the following for treatment of Drakos' claim:

> Chris Drakos' [sic] has a first mortgage on
> approximately 98.2 acres of real property together
> with the house thereon in the sum of
> approximately $613,918.22. Effective as of April
> 14, 2010,[3] the Stay shall be lifted. In the
> meantime, the debtor shall continue to market the
> real property.

Debtor's Second Amended Chapter 12 Plan at 4-5, Docket No. 86.

While not set forth in the plan, additional details concerning

---

[3] There is a discrepancy between this date, and the date which the Court
indicated stay relief would be effective for Drakos. *See* Minute Entry, Docket No.
70. The difference is of no consequence, however, since the order terminating the
stay as to the ranch property was signed and entered on April 19, 2010. Docket
No. 115.

MEMORANDUM OF DECISION - 4

Debtor's intentions for the ranch were revealed during her discussions

with the trustee, and through the in-court arguments made by her counsel.

Apparently, while she presumes Drakos will proceed with a sheriff's sale

of her property, and expects him to purchase the property with a credit-bid

at the sale, Debtor intends, in the meantime, to remain in possession of the

ranch so long as she has state-law redemption rights.[4]  If he insists, Debtor

will pay Drakos reasonable rent for her use of the property during this

time.[5]  Because she has a right to redeem the property from the foreclosure

sale, Debtor will also continue to attempt to sell the property for a sum

sufficient to pay Drakos' claim.

Drakos objected to the plan, and in particular, to its treatment of his

secured claim.  Docket No. 92.  Without reciting all the details, the theme of

---

[4]  In Idaho, when the foreclosed real property contains more than twenty
acres, a judgment debtor is granted one year from the sale to redeem the
property from the purchaser.  Idaho Code § 11-402.

[5]  During the redemption period, the mortgagor is considered to be a
"tenant in possession" of the foreclosed property, and the purchaser is entitled to
recover the value of the tenant's use and occupation of the property from the
tenant.  Idaho Code § 11-407; *Caldwell v. Thiessen*, 92 P.2d 1047, 1048-49 (Idaho
1939).

MEMORANDUM OF DECISION - 5

Drakos' objection is that the treatment proposed by Debtor for his secured claim does not comply with § 1225(a)(5).[6]  The Court agrees with Drakos.

## Discussion

### I.

Debtor bears the burden of showing that her proposed plan complies with the confirmation requirements of § 1225.  *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1214 n. 5 (9th Cir. 1994) ("The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it[.]"); *In re Wilson*, 378 B.R. 862, 893 (Bankr. D. Mont. 2007) (noting that debtors bore the burden of showing that all requirements for confirmation of their plan set forth in § 1225 had been satisfied).  Section 1225(a)(5) provides:

> Except as provided in subsection (b), the court shall confirm a plan if—

---

[6]  Debtor's plan does not address Drakos' status or rights if a foreclosure sale nets him an insufficient amount to pay his claim in full.  Oddly, while the plan does not provide that Drakos may participate as an unsecured creditor for any deficiency, Drakos' objection to confirmation does not raise this point, nor does he make any objections to confirmation concerning the plan's treatment of unsecured creditor claims.

MEMORANDUM OF DECISION - 6

* * * *

(5)  with respect to each allowed secured claim provided for by the plan—

(A)  the holder of such claim has accepted the plan;

(B)(i)  the plan provides that the holder of such claim retain the lien securing such claim; and

(ii)  the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C)  the debtor surrenders the property securing such claim to such holder[.]

Obviously, Drakos has not accepted the plan, nor does the plan propose to pay his claim.  Instead, Debtor's plan merely provides that Drakos can proceed to exercise his state-law rights to foreclose on the ranch.  Clearly, then, Debtor's plan does not fulfill the requirements of either subparagraphs (A) or (B) of § 1225(a)(5) as to Drakos' secured claim.

Instead, Debtor insists that her plan satisfies the requirements of subparagraph (C).  As the Court understands her argument, she contends that her willingness to stand aside and allow Drakos to foreclose is tantamount to a "surrender" of the ranch to Drakos.  Debtor's argument

MEMORANDUM OF DECISION - 7

lacks merit.

II.

Under the Code, to confirm a plan over the objection of a secured creditor, a chapter 12 debtor must either propose to pay the amount of the allowed secured claim in deferred payments with interest, or the plan must propose to surrender the property securing the claim to the holder of the claim.  What is arguably unclear from the text of the Code, however, is what is meant, in practice, when Congress refers to a "surrender" of the secured creditor's collateral under § 1225(a)(5)(C).

Precious little case law construing this provision exists to aid the Court in this determination, although there are a few decisions examining similar provisions in other chapters of the Code.  Several courts suggest that in order to effectively surrender collateral to a secured creditor, a debtor must take affirmative action to relinquish possession or control of the property to the creditor.

For example, in one chapter 12 case, a district court noted that the

MEMORANDUM OF DECISION - 8

"use of the word 'surrender' implies that the debtor relinquishes control of the property to the secured creditor without any conditions." *First Brandon Nat. Bank v. Kerwin-White,* 109 B.R. 626, 630 (D. Vt. 1990). That decision was appealed to the Second Circuit Court of Appeals, which in its decision noted that there is a difference between surrender of collateral under subparagraph (C) of § 1225(a)(5), and distribution of property to the secured creditor in payment of its claim under subparagraph (B). *First Brandon Nat. Bank v. Kerwin (In re Kerwin)*, 996 F.2d 552, 556 (2d Cir. 1993). The court of appeals observed that "[w]hen a debtor elects to surrender the collateral under (C), the secured creditor takes possession of the property and sells it in accordance with non-bankruptcy law." *Id.* at 557. This view is consistent with a leading treatise, which explains:

> A "surrender" of property means that the debtor relinquishes the property to the secured creditor. The secured creditor then takes possession of the property and liquidates the property in accordance with applicable nonbankruptcy law.

8 Collier on Bankruptcy, ¶ 1225.03[5], at 1225-25 (rev. 15th ed. 2005).

MEMORANDUM OF DECISION - 9

Similarly, another court described a surrender of property under

§ 1225(a)(5)(C) as a process in which the debtor "forfeits" the property.

*Travelers Ins. Co. v. Bullington*, 878 F.2d 354, 356 (11th Cir. 1989).

Decisions construing § 1325(a)(5)(C), a provision containing identical

language applicable in chapter 13 cases, reach a similar conclusion.  In one

of them, the Fourth Circuit noted that it was "clear enough that the

'surrender' spoken of [in § 1325(a)(5)(C)] entails the secured creditor

ultimately holding all rights, including the right of possession, in the

property securing the claim."  *IRS v. White (In re White)*, 487 F.3d 199, 205

(4th Cir. 2007).  The court also advised that although the Code did not

expressly define the term "surrender," other legal and non-legal definitions

of the term "focus on the complete relinquishment of rights."  *Id.* (citing

*Black's Law Dictionary* 1484 (8th ed. 2005) (defining "surrender" as

"yielding to another's power or control" and "giving up of a right or

claim") and *Merriam-Webster's Collegiate Dictionary* 1258 (11th ed. 2003)

(defining "surrender" as "the action of yielding one's person or giving up

the possession of something esp. into the power of another")).  Expressing

MEMORANDUM OF DECISION - 10

the same view, other courts have explained that "[t]he term 'surrender'

was contemplated by Congress to be a return of property and a

relinquishing of possession or control to the holder of the claim." *In re*

*Carter*, 390 B.R. 648, 652 (Bankr. W.D. Mo. 2008) (citing *In re Stone*, 166 B.R.

621, 623 (Bankr. S.D. Tex. 1993)). *See also Hosp. Auth. Credit Union v. Smith*

*(In re Smith)*, 207 B.R. 26, 30 (Bankr. N.D. Ga. 1997) (observing that "[t]he

operative phrase in section 1325(a)(5)(C) does not end with the word

'property' but continues with the words 'to such holder,' making it plain

that a debtor must at least tender possession or control of the collateral to

the creditor[.]").

Put another way then, to be confirmed, a chapter 12 plan must either

be accepted by a secured creditor, the creditor must retain its lien and the

value of its allowed secured claim must be paid to the creditor in deferred

payments, or the debtor must relinquish possession and control of the

collateral to the creditor so it may enforce its security interest under

MEMORANDUM OF DECISION - 11

applicable law.[7]  In this case, Debtor's plan takes a different approach.

Debtor does not propose to pay Drakos' allowed secured claim.  And by

acknowledging that Drakos may foreclose, but retaining possession and

use of the ranch, Debtor's plan does not propose an effective surrender of

the secured property to Drakos for purposes of § 1225(a)(5)(C).  In fact,

under her plan, Debtor relinquishes no significant rights in the property.

Instead, she retains title, possession and control of the property.   Indeed,

because he has already been granted stay relief, Drakos is, legally, no better

off under Debtor's plan than otherwise.

It is unclear whether, to effectively surrender the ranch property

under the Code, Debtor must transfer title to him.  *Cf. Green Tree Fin. Serv.

Corp. v. Theobald (In re Theobald)*, 218 B.R. 133, 135 (10th Cir. B.A.P. 1998)

(discussing a debtor's duty under § 521 to surrender property to the

trustee, noting that "the statute does not require a debtor to transfer title by

---

[7] Of course, a debtor may propose to sell the creditor's collateral and pay
the creditor's secured claim.  Sections 363(f) and 1206 authorize this approach if
the sale takes place before confirmation.  But, if the sale is proposed to occur after
a plan is confirmed, the terms of such sale would have to satisfy § 1225(a)(5)(B).

MEMORANDUM OF DECISION - 12

executing and delivering a deed in order to effectuate surrender.").

However, at a minimum, to comply with § 1225(a)(5)(C), Debtor must

relinquish possession and control of the property to Drakos.  Because her

plan does not so provide, the Court concludes that Debtor does not

effectively surrender the property to Drakos.[8]

**Conclusion**

Debtor's Second Amended Chapter 12 Plan, Docket No. 86, does not

comply with § 1225(a)(5) in its treatment of Drakos' secured claim.  As a

result, Debtor's plan can not be confirmed.  Debtor must therefore file a

proposed Third Amended Plan that conforms with this decision within

---

[8]  Another argument in Debtor's brief deserves comment.  She contends
that because the automatic stay has been terminated, and Drakos can now
proceed to foreclose on the ranch under Idaho law, that Debtor need not treat his
claim as secured under the plan at all.  *See* Debtor's Reply Memorandum in
Support of Confirmation at 2, Docket No. 119.  Debtor cites no authority for this
proposition, perhaps because none likely exists.  Although the Court granted
Drakos' motion for stay relief, contrary to Debtor's view, Drakos will continue to
hold a secured claim until a foreclosure sale occurs and his claim is either paid,
or he purchases the property via credit bid.  At the confirmation hearing, Drakos'
counsel estimated that it would likely take two months or more after stay relief
was granted for a foreclosure sale to be conducted.  Because Drakos still holds a
secured claim in this case, Debtor must treat his claim in accordance with
§ 1225(a)(5) to confirm any plan.

MEMORANDUM OF DECISION - 13

fourteen (14) days of entry of this Court's order denying confirmation, and

schedule that plan for further hearing.[9]  If Debtor declines to do so, the

Court will, upon Drakos' request, dismiss this case.  *See* 11 U.S.C.

§ 1208(c)(5).[10]

Dated:  April 29, 2010

_____

Honorable Jim D. Pappas

United States Bankruptcy Judge

---

[9]  Of course, no further hearing will be required to confirm an amended plan if all parties, including Drakos and the chapter 12 trustee, consent to its terms.

[10]  At the confirmation hearing, the parties agreed that the pending motion for relief from the automatic stay filed in this case by creditor D.L. Evans Bank, Docket No. 46, would be deemed resolved if Debtor's amended plan was confirmed.  Since the Court has decided to deny confirmation of that plan, if the creditor does not consent to the terms of any further amended plan, it may schedule its stay relief motion for an additional hearing.

MEMORANDUM OF DECISION - 14